UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Case No. 1:22-cv-5934 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| EPIZYNE, INC., KEN BATE, ROY A. | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| BEVERIDGE, M.D., GRANT BOGLE, | : **THE SECURITIES EXCHANGE ACT** |
| KEVIN T. CONROY, MICHAEL F. | : **OF 1934** |
| GIORDANO, M.D., CARL GOLDFISCHER, | : |
| M.D., PABLO LEGORRETA, DAVID M. | : **JURY TRIAL DEMANDED** |
| MOTT, VICTORIA RICHON, PH.D., and | : |
| CAROL STUCKLEY, M.B.A., | : |
| | : |
| Defendants. | |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Epizyme Resources, Inc. ("Epizyme or the "Company") and the members Epizyme board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Epizyme by affiliates of Ipsen Biopharmaceuticals, Inc. ("Ipsen").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on July 12, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation

Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Hibernia Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Ipsen and Ipsen Pharma SAS ("Parent"), will merge with and into Epizyme, with Epizyme continuing as the surviving corporation and becoming a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated June 27, 2022 (the "Merger Agreement"), each Epizyme common share issued and outstanding will be converted into the right to receive: (i) $1.45 in cash, plus (ii) one contractual contingent value right per share (a "CVR"), payment upon the achievement of certain milestones worth up to $1.00 in the aggregate (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of Epizyme's outstanding common stock and will expire on August 8, 2022 (the "Tender Offer").

3.     Defendants have now asked Epizyme's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Epizyme's financial projections relied upon by the Company's financial advisor, MTS Securities, LLC ("MTS Securities") in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by MTS Securities. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Epizyme stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the Tender Offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Epizyme's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the NASDAQ Global Select, which is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Epizyme common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Ken Bate has served as a member of the Board since December 2014.

11. Individual Defendant Roy A. Beveridge, M.D. has served as a member of the Board since November 2021.

12. Individual Defendant Grant Bogle has served as a member of the Board since August 2021 and is the Company's President and Chief Executive Officer.

13. Individual Defendant Kevin T. Conroy has served as a member of the Board since February 2017.

14. Individual Defendant Michael F. Giordano, M.D. has been a member of the Board since May 2018.

15. Individual Defendant Carl Goldfischer, M.D. has been a member of the Board since September 2009.

16. Individual Defendant Pablo Legorreta has been a member of the Board since November 2019.

17. Individual Defendant David M. Mott has been a member of the Board since December 2009 and is the Chairman of the Board.

18. Individual Defendant Victoria Richon, Ph.D. has been a member of the Board since September 2019.

19. Individual Defendant Carol Stuckley, M.B.A. has been a member of the Board since November 2021.

20. Defendant Epizyme is incorporated in Delaware and maintains its principal offices at 400 Technology Square, 4th Floor, Cambridge, MA 02139. The Company's common stock trades on the NASDAQ Global Select under the symbol "EPZM."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

23. Epizyme, a commercial-stage biopharmaceutical company, discovers, develops, and commercializes novel epigenetic medicines for patients with cancer and other diseases in the United States. The Company offers Tazemetostat for the treatment of metastatic or locally advanced epithelioid sarcoma for adults and pediatric patients. It also develops R-CHOP in front-line patients with high risk diffuse large B-cell lymphoma; and PARP inhibitor in patients with PARPi-resistant solid tumors, such as castration-resistant prostate cancer, small cell lung cancer, and others. In addition, the company develops Tazemetostat in patients with INI1-negative tumors in adults and pediatrics; PRMT5 inhibitor for patients with solid tumors; and PRMT1 inhibitor. It has collaboration agreements with Roche Molecular Systems, Inc.; Lymphoma Academic Research Organization; Eisai Co. Ltd.; HUTCHMED (China) Limited; and Roche Sequencing Solutions, Inc. The Company was incorporated in 2007 and is headquartered in Cambridge, Massachusetts.

24. On June 27, 2022, Epizyme and Ipsen jointly announced the Proposed Transaction:

> PARIS & CAMBRIDGE, MASS.--(BUSINESS WIRE)--Jun. 27, 2022-- Regulatory News:
>
> Ipsen (Euronext: IPN; ADR: IPSEY) and Epizyme (Nasdaq: EPZM) today announced that they have entered into a definitive merger agreement under which Ipsen will acquire Epizyme. The transaction was unanimously approved by both Ipsen and Epizyme Boards of Directors and is anticipated to close by the end of the third quarter of 2022, subject to the satisfaction of all closing conditions. Epizyme is a fully integrated, commercial-stage biopharmaceutical company developing and delivering transformative therapies against novel epigenetic targets for cancer patients.

The primary focus of the acquisition is on the lead medicine, Tazverik® (tazemetostat), a first-in-class, chemotherapy-free EZH2[a] inhibitor, which was granted Accelerated Approval by the U.S. Food and Drug Administration (FDA) in 2020. It is currently indicated for adults with relapsed or refractory follicular lymphoma (FL) whose tumors are positive for an EZH2 mutation as detected by an FDA-approved test and who have received at least two prior systemic therapies, and for adult patients with relapsed or refractory follicular lymphoma who have no satisfactory alternative treatment options, as well as for adults and pediatric patients aged 16 years and older with metastatic or locally advanced epithelioid sarcoma not eligible for complete resection.[1] Tazverik is currently in the Phase III stage of a registrational confirmatory study (SYMPHONY-1) in combination with rituximab and lenalidomide (R[2]) in patients with relapsed/refractory FL who have received at least one prior therapy. Initial results from the Phase III randomized portion of this study are planned to read out in 2026.

As part of the transaction, Ipsen will also acquire Epizyme's first-in-class, oral SETD2 inhibitor development candidate, EZM0414, which was granted FDA Fast Track status and is currently under evaluation in a recently initiated Phase I/Ib trial in adult patients with relapsed or refractory multiple myeloma and diffuse large B-cell lymphoma, as well as a portfolio of preclinical programs focusing on epigenetic targets.

"Through this agreement, we will expand our assets in oncology. Ipsen's capabilities and resources in oncology combined with Epizyme's will accelerate the growth of Tazverik to achieve its full potential in follicular lymphoma patients. The strength of data support Tazverik's positioning in patients with both EZH2 mutation positive and wild-type follicular lymphoma. We are compelled by the potential of its efficacy and tolerability profile, especially for elderly and/or frail patients who are treated in the community-based setting. Furthermore, we are excited to bring on board epigenetic expertise and the SETD2 inhibitor, as well as several pre-clinical compounds into our portfolio," said David Loew, Chief Executive Officer of Ipsen.

"Epizyme was founded in 2007 with a commitment to rigorous scientific research and a vision of developing novel epigenetic therapies. I am incredibly proud of what our team has accomplished over the past 15 years, from the approval of Tazverik to advancing our next novel investigational agent, EZM0414, to the clinic, as well as the progress made on our preclinical compounds focused on both hematologic malignancies and solid tumors," said Grant Bogle,

President and Chief Executive Officer of Epizyme. "We expect that this acquisition and Ipsen's commitment to invest in the oncology space will ensure our epigenetic pipeline continues to advance in a way we could not have done on our own to bring transformative cancer therapies to patients in need."

**Financial highlights**

The acquisition of Epizyme will immediately provide incremental sales and will leverage the U.S. commercial infrastructure. Given the level of ongoing R&D expenses, the transaction is expected to be moderately dilutive on Ipsen's core operating income until the end of 2024. This is in line with Ipsen's medium-term outlook regarding its strategic focus on building a high-value and sustainable pipeline through external innovation. The dilutive impact on 2022 core operating margin will be limited, given the expected timing of the transaction.

**Transaction details**

The Board of Directors of Epizyme has unanimously approved the transaction and recommended that the stockholders of Epizyme tender their shares in the tender offer. Royalty Pharma, Epizyme's largest stockholder with approximately 20.5% of Epizyme's total shares of common stock outstanding (on a non-diluted basis) as of the date hereof, has entered into a support agreement with Ipsen pursuant to which it has agreed to tender its shares in the tender offer.

Under the terms of the agreement and plan of merger, Ipsen, through a subsidiary, will initiate a tender offer to acquire all outstanding shares of Epizyme at a price of $1.45 per share in cash at the closing of the transaction, for an initial estimated aggregate consideration of $247 million[b] plus one contingent value right (CVR) per share. Each CVR will entitle its holder to deferred cash payments of $0.30 per CVR payable upon the first achievement of $250 million in aggregate net sales of Tazverik (excluding sales in Japan and Greater China[c]) in any period of four consecutive quarters, by 31 December 2026 and $0.70 per CVR payable upon receipt of U.S. regulatory approval necessary for the commercial marketing and sale of the combination of Tazverik and R$^2$ (rituximab and lenalidomide) in second-line follicular lymphoma by 1 January 2028. The $1.45 per share cash consideration represents a premium of approximately 144% compared to Epizyme's average closing price of $0.60 over the 30 trading days preceding announcement of

7

the transaction. The transaction will be fully financed by Ipsen's existing cash and lines of credit.

The closing of the tender offer will be subject to customary conditions, including the tender of shares representing at least a majority of the total number of Epizyme's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions. Upon the successful completion of the tender offer, Ipsen would acquire all shares not acquired in the tender through a second-step merger for the same consideration as the tendering shareholders.

**Advisors**
Barclays is acting as exclusive financial advisor to Ipsen and Orrick Herrington & Sutcliffe LLP as legal counsel to Ipsen. Epizyme is advised by both Jefferies and MTS Health Partners, L.P., joint lead financial advisors in connection with the transaction, with WilmerHale serving as legal counsel. In addition, MTS Securities, LLC (an affiliate of MTS Health Partners, L.P.) provided an opinion to the Board of Directors of Epizyme regarding the fairness of the offer consideration to be received by the holders of Epizyme common stock in the transaction, subject to the qualifications and limitations set forth therein.

\* \* \*

25. It is therefore imperative that Epizyme's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.      The Materially Incomplete and Misleading Solicitation Statement**

26. On July 12, 2022, Epizyme filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.

8

However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Company Financial Projections*

27. The Solicitation Statement fails to provide material information concerning financial projections by Epizyme management and relied upon by the financial advisors in their analyses. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Epizyme management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Projections prepared by Company management for Epizyme on a project-by-project basis for fiscal years 2022 through 2035, the Solicitation Statement provides values for EBIT and Unlevered Free Cash Flow, which are non-GAAP (Generally Accepted Accounting Principles) financial metrics, without a table of reconciliation to their most comparable financial measures, in direct violation of Regulation G.

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide line items used for the cash flows and a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32. Further, the Solicitation Statement states that the Probability Adjusted Projections reflect probability adjustments. However, the Solicitation Statement omits information regarding those adjustments.

*Omissions and/or Material Misrepresentations Concerning MTS Securities' Financial Analyses*

33. With respect to MTS Securities' *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the terminal value for Epizyme; (ii) the inputs and assumptions underlying the terminal growth rate of -75% to 0%; (iii) the inputs and assumptions underlying the weighted average cost of capital of 13% to 17%.

34. With respect to MTS Securities' *Public Trading Comparable Companies Analysis*, the Solicitation Statement fails to disclose the metrics and multiples for the companies selected by MTS Securities for the analysis.

35. With respect to MTS Securities' *Precedent Transactions Analysis*, the Solicitation Statement fails to disclose the metrics and multiples for the transactions selected by MTS Securities for the analysis.

36. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender his shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

39. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

41. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

42. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

43. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

44. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
### Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
**(Against All Defendants)**

45. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

46. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

47. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

48. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

49. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

50. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of Epizyme within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Epizyme, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Epizyme, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Epizyme, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

55. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: July 12, 2022                              **MELWANI & CHAN LLP**

                                                 /s *Gloria Kui Melwani*

16

        Gloria Kui Melwani (GM5661)
        1180 Avenue of the Americas
        New York, New York 10036
        Tel: (212) 382-4620
        Email: gloria@melwanichan.com

*Attorneys for Plaintiff*